FILED

**NOT FOR PUBLICATION**

JUN 04 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   NC-17-1140-TaFB |
| | ) | |
| FARIBA S. EVJENTH, | ) | Bk. No.   3:16-bk-30329-HLB |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| FAREED SEPEHRY-FARD, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| SELECT PORTFOLIO SERVICING, | ) | |
| INC.; DAVID BURCHARD, | ) | |
| Chapter 13 Trustee, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Submitted Without Argument on May 25, 2018

Filed – June 4, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Appearances:   Appellant Fareed Sepehry-Fard, pro se, on brief; Nichole Glowin of Wright, Finlay & Zak, LLP on brief for appellee Select Portfolio Servicing, Inc.; Lilian G. Tsang on brief for appellee David Burchard, Chapter 13 Trustee.

Before:   TAYLOR, FARIS, and BRAND, Bankruptcy Judges.

---

   [*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

Fareed Sepehry-Fard (here, "Appellant") appeals from the bankruptcy court's order denying his motion seeking an evidentiary hearing and sanctions. While Appellant argues that Select Portfolio Servicing, Inc. ("SPS") and the chapter 13[1] trustee, David Burchard, (collectively, "Appellees") wronged him, the bankruptcy court denied the motion based on a determination that it lacked jurisdiction to consider the merits of his claims. On appeal, Appellant never establishes — much less argues — that the bankruptcy court erred in so deciding. We also discern no error. As a result, we AFFIRM the bankruptcy court.

**FACTS[2]**

Appellant claims that Appellees stole from him. His theory of theft turns in part on SPS's receipt of proceeds from the unopposed sale of real property in Saratoga, California (the "Property"). Although neither we nor the bankruptcy court have jurisdiction to resolve the dispute, we relay the following facts to provide context for this appeal.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and in the underlying bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

**Fariba Evjenth ("Debtor") files bankruptcy, sells the Property, and confirms a chapter 13 plan.** Debtor filed a chapter 13 petition, scheduled an interest in the Property, and identified Appellant as a co-owner. She promptly moved to sell the Property for $1,450,000. Her supporting documents estimated that $820,885 would be used to pay off the first mortgage and that unsecured creditors would be paid in full from the remaining sale proceeds. The bankruptcy court approved the sale through an order noting a lack of opposition. Escrow closed.

Thereafter, the bankruptcy court confirmed Debtor's chapter 13 plan. It provided for a 100% distribution to unsecured claimants from Property sale proceeds.

**The bankruptcy court denies Appellant's post-sale questioning of the secured parties' legitimacy.** The Bank of New York Mellon, through SPS, filed a proof of claim; Appellant objected and shortly thereafter filed two motions: first, a "Motion for Alleged Attorneys' Proof of Authority to Represent Alleged Creditors"; and, second, a motion to "compel the verification of the amount of the alleged debt under oath, for evidentiary hearing . . . ."

Both motions were opposed; the bankruptcy court separately denied both. It concluded that Appellant lacked statutory, constitutional, and prudential standing and was not a real party in interest. It then reasoned, as to each motion, that even if Appellant had standing, it would deny them as without merit — in part because Appellant did not object to the claim until after the Bank of New York Mellon was paid in full.

Appellant sought reconsideration and raised various

3

arguments, alleging that all state court judges have been bribed, that failure to enforce his "non-judicial judgment" is "nothing but mutiny[,]" and that the Property is part of a land patent and protected by the Treaty of Guadalupe Hidalgo.

At the hearing on his reconsideration motion, Appellant conceded that he did not object to the sale of the Property. And the bankruptcy court reiterated that Appellant lacked standing because he was not Debtor, had no claim against Debtor, signed off on the plan, signed off on the escrow instructions, and signed off on the motion to sell. The bankruptcy court then denied the motion on the record; it also entered a separate order denying the motion.

Appellant appealed, but, because he did not pay the required fee, the appeal was dismissed.

**Appellant unsuccessfully requests an evidentiary hearing and sanctions and files the present appeal**. A month and a half later, Appellant filed a motion for an evidentiary hearing and for sanctions (the "Third Motion"). He wanted the court to "*finally* verify and validate the amount of the alleged debt that was allegedly owed to the alleged '*creditor*', if there is any or there was any, under Oath . . . ."

At the hearing, the bankruptcy judge denied the Third Motion because "this is not a dispute I can adjudicate." Hr'g Tr. (Apr. 19, 2017) 7:15-16. She characterized Appellant's request as "the same request that you've made to me before . . . you want somebody -- you want the lender whose loan has been paid off to provide you with an accounting of some kind . . . ." Id. at 3:14-18. Appellant disagreed and said that the present

4

motion was different: he also wanted a return of "his" note or its proceeds.

The bankruptcy judge, yet again, detailed how Appellant no longer had a connection with the bankruptcy case:

> So, Mr. Fard, you're not a creditor in this case, and you're not the debtor in this case, and your dispute is with a lender whose note has been paid off, and is therefore no longer a party in interest in this bankruptcy case. That's not a dispute that I can adjudicate, and we've been over this territory several times before. I understand that you have had bad experiences with State Court judges and that you don't necessarily want to proceed [with] your claims against the lender in State Court, but I think that's where you have to be because I can't adjudicate disputes between parties who are not involved in cases before me.

Id. at 4:13–24.

Appellant stated that he was a creditor because "they have taken my promissory note and resold it to unknown parties. Those monies belong to me, which makes me a creditor, Judge." Id. at 5:7–9.

Seeing the disconnect, the bankruptcy judge explained how being a creditor of someone, generally, was insufficient to establish a connection with the present bankruptcy case:

> [Y]ou're a creditor then of somebody who's not before me. You're not a creditor of this Debtor. The note has been paid off, and really I don't see any difference in what you're asking me to do today, consent to what you've asked me to do twice before, and I've tried to explain, Mr. Fard, that I can't really help you, and I'm really sorry for that.

Id. at 5:10–16.

Appellant then suggested that the chapter 13 trustee had a duty to "take that note from the alleged creditors and give it back to me . . . ." Id. at 6:1–3. The bankruptcy judge disagreed and informed Appellant that "that's not the Chapter 13

5

Trustee's job." Id. at 6:10-11. To the extent Appellant had a dispute or was otherwise entitled to something from the secured lender, the bankruptcy judge again emphasized that it lacked jurisdiction: "[T]hat's a dispute that doesn't involve this bankruptcy case. And those are the only kinds of disputes that I can adjudicate, and so I'm sorry, but I'm going to have to deny this motion." Id. at 6:15-18. In short, the bankruptcy court patiently listened to Appellant's arguments, addressed his concerns, and then denied the motion.[3]

The bankruptcy court entered a separate order denying the Third Motion for the reasons stated on the record.

Appellant timely filed a notice of appeal.

**JURISDICTION**

The bankruptcy court concluded that it lacked jurisdiction, which we discuss below. We have jurisdiction over this appeal under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err when it denied the Third Motion for lack of jurisdiction?

**STANDARD OF REVIEW**

We review subject matter jurisdiction de novo. Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1284 (9th Cir. 2013). We review related findings for clear error. Coyle v. P.T. Garuda Indonesia, 363 F.3d 979,

---

[3] Appellant filed several papers about the record on appeal. He notes that the court reporter revised the April 19, 2017 transcript to add a line on page 7. To the extent there is any confusion, we accept the corrected transcript

6

984 n.7 (9th Cir. 2004).

## DISCUSSION

We start by clarifying the scope of this appeal. Appellant did not appeal the sale order, and his appeal from the orders denying his verification and reconsideration motions was dismissed. This appeal concerns only the denial of the Third Motion.

And while Appellant raises various arguments in his opening brief, he never specifically and distinctly addresses the basis for denial of the Third Motion, the bankruptcy court's underlying conclusion that it lacked jurisdiction. He thus waived the right to assert argument on the only question relevant to this appeal. Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (per curiam) (appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief"). We, accordingly, affirm.

Even when we consider Appellant's arguments, they are not persuasive.

**A.     The bankruptcy court's form of order is proper.**

Appellant asserts that the bankruptcy court's order violates Civil Rule 54(a) by being replete with references to the pleadings and record of other proceedings. He also invokes Civil Rule 58 (the separate judgment rule) and Civil Rule 52 and urges us to remand for entry of a judgment separate from the

findings of fact and conclusions of law.[4]

We find no error related to the form of order under Civil Rule 54(a). Compliance with Civil Rule 58's separate judgment requirement was not required.[5] And the bankruptcy court is allowed to state its findings and conclusions on the record orally, as it did here. Fed. R. Civ. P. 52(a)(1); Fed. R. Bankr. P. 7052, 9014 (applying Civil Rule 52 in adversary proceedings and contested matters).

**B.    The bankruptcy court correctly determined that it lacked jurisdiction.**

We also see no error in the bankruptcy court's conclusion that it lacked jurisdiction over Appellant's dispute.

Bankruptcy court jurisdiction "is created and limited by statute." In re Wilshire Courtyard, 729 F.3d at 1284 (citing Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995)). Bankruptcy courts have subject matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under

---

[4]  The order reads as follows:

On April 19, 2017, the court held a hearing on [the Third Motion] filed by Fareed-Sepehry-Fard. Appearances were as noted on the record. Upon due consideration of the pleadings and argument of the parties, and for the reasons stated on the record, the court **DENIES** the [Third] Motion.

[5]  As this was a contested matter, Rule 9014 applied many of the Rules (and thus Civil Rules) to the proceeding. But Rule 7058, which applies Civil Rule 58's separate judgment requirement to adversary proceedings, does not apply in contested matters. See Fed. R. Bankr. P. 9014(c).

8

title 11." 28 U.S.C. § 1334(b);[6] <u>In re Wilshire Courtyard</u>, 729 F.3d at 1285. A bankruptcy court also has jurisdiction over all assets of the debtor and property of the estate. 28 U.S.C. § 1334(e)(1); <u>Cent. Va. Cmty. Coll. v. Katz</u>, 546 U.S. 356, 369 (2006) ("Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction.").

Here, the bankruptcy court approved the sale of the Property. No one appealed that order. Accordingly, the sale terminated 28 U.S.C. § 1334(e)(1) in rem jurisdiction over the Property. <u>See</u> <u>Stokes v. Duncan (In re Stokes)</u>, BAP No. MT-13-1097-TaPaJu, 2013 WL 5313412, at *3 (9th Cir. BAP Sept. 23, 2013) ("It is axiomatic that in rem jurisdiction over an asset terminates once the bankruptcy estate relinquishes all rights and interests in the asset.") (citing cases). In addition, as was true under the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (1898), a bankruptcy court ordinarily lacks jurisdiction to adjudicate ownership disputes involving former property of the estate. <u>Id.</u> (citing sources). So the bankruptcy court lacked in rem jurisdiction over the dispute.

Nor did the bankruptcy court have arising under, arising in, or related to jurisdiction.

Appellant's request did not "arise under" the Code because

---

[6] Jurisdiction is initially conferred on the district courts. 28 U.S.C. § 1334. The district courts, in turn, may refer bankruptcy cases and proceedings to the bankruptcy courts. 28 U.S.C. § 157(a). "[E]ach district court has provided by rule for automatic reference to bankruptcy judges." 1 <u>Collier on Bankruptcy</u> ¶ 3.02[1] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed.).

it did not depend "on a substantive provision of bankruptcy law" — that is, it did not involve "a cause of action created or determined by a statutory provision of the Bankruptcy Code." Battleground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124, 1131 (9th Cir. 2010). To the contrary, Appellant asserts violations of the Truth in Lending Act, refers to the California Commercial Code, and alludes to the Fair Debt Collection Practices Act.

Appellant's dispute did not "arise in" the case; a matter arises in a case when it is "an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." Id. Appellant can assert his claims in another forum.

The dispute was not "related to" the bankruptcy case because its outcome cannot affect the administration of Debtor's bankruptcy estate. Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988). Debtor used the sale proceeds to pay off her plan and her secured obligations. Appellant seeks relief for his sole benefit; he wants a "return of all monies that Appellees have stolen from Appellant . . . ." Appellant's Opening Br. at 23.

Finally, nothing suggests that ancillary jurisdiction exists here. "Ancillary jurisdiction may rest on one of two bases: (1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." In re Ray, 624 F.3d at 1135 (citation and quotation marks omitted). The bankruptcy court saw no need to vindicate its own authority nor were there

10

factually interdependent claims to resolve.

Accordingly, even after a de novo review, we affirm the bankruptcy court's conclusion that it lacked jurisdiction.

**C. Debtor's remaining arguments lack merit.**

Debtor raises a variety of issues and arguments. He lists nineteen issues on appeal, but then fails to discuss many of them in his argument section; we deem them abandoned. Kohler v. Inter-Tel Techs., 244 F.3d 1167, 1182 (9th Cir. 2001) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); Fed. R. Bankr. P. 8014(a)(8). In the interest of completeness, we discuss the issues that he argues.

**Appellant does not have a right to a jury trial**. Appellant asserts entitlement to a jury trial under the Seventh Amendment because the amount in controversy was over $20. We take no position on his entitlement to a jury trial in a non-bankruptcy forum, but he had no such right in this bankruptcy case. He was not entitled to a jury trial on his claim objection; a Seventh Amendment right to a jury trial exists in bankruptcy proceedings only if the party has not submitted to the bankruptcy court's equitable power. Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990); Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 58 (1989); Hickman v. Perlmutter (In re Hickman), 384 B.R. 832, 837–39 (9th Cir. BAP 2008). Here, Appellant submitted to the bankruptcy court's equitable power; indeed, he wanted the bankruptcy court, and not any other court, to resolve his dispute. Further, he waived any such right as he never filed a Civil Rule 38(b) jury trial demand. Fed. R. Civ. P. 38(d); Fed. R. Bankr. P. 9015 (applying Civil Rule 38 in bankruptcy

11

proceedings).

**The bankruptcy court does not need to enter additional findings.** Having failed to get an evidentiary hearing, Appellant now seeks the same result by arguing that the bankruptcy court did not enter sufficient findings and that we should direct it to do so. He wants the bankruptcy court to address his various claims under substantive non-bankruptcy law. Appellant misunderstands the bankruptcy court's decision; it correctly denied the motion because it lacked jurisdiction, and it provided sufficient findings to support that conclusion. Thus, not only is there no need for the bankruptcy court to enter additional findings, the bankruptcy court has no authority to do so.

**The bankruptcy court was not biased.** Last, Appellant questions the bankruptcy court's integrity; he states that the bankruptcy judge "appeared biased," and so he "did not get his due process rights from the lower court[.]" Id. at 19 (capitalization removed).

We disagree. The transcript from the April 19, 2017 hearing does not reflect bias on the bankruptcy judge's part. To the contrary, it evidences patient consideration of Appellant's position, careful explanation of the infirmities in his position, clear direction to the appropriate forum for seeking redress of his concerns, and a polite and respectful conduct of the hearing. Appellant got all that due process requires and a judge who appropriately heard his case.

**D.    We deny Appellant's remaining appellate motions.**

Appellant filed various appellate motions. Still pending

12

motions include: a motion for sanctions for filing of a frivolous brief and making false statement, BAP Dkt. No. 31; a "statement and joinder to" the motion for sanctions, BAP Dkt. No. 32; a motion "enjoining" SPS to "Appellant's Informal Reply Brief," BAP Dkt. No. 33; and a request to concurrently adjudicate his appeal and motion for sanctions, BAP Dkt. No. 35. All lack merit.

Appellant's motion for sanctions seeks sanctions against the Trustee's counsel because she allegedly made misrepresentations in her brief. We have reviewed the Trustee's brief; it accurately represents and depicts the record. And Appellant's suggestion that Trustee's counsel admitted to mutiny and treason against the United States is specious. We deny the motion.

We deduce that Appellant's "statement and joinder" motion is his attempt to add SPS's counsel to his sanctions motion. We have reviewed SPS's brief, as well, and it also accurately represents and depicts the record. We deny this motion.

We deduce that Appellant's motion "enjoining" SPS "to Appellant's informal reply brief," BAP Dkt No. 33 at 1 (capitalization removed), is his attempt to have his reply brief apply to SPS's brief, as well. To the extent Appellant wants us to treat his reply brief as a global reply, we grant the motion; to the extent he seeks any other relief, we deny it.

We deny his request that we concurrently adjudicate "both the appeal and motion to stay since Appellant is also filing his reply brief with this request . . . ." BAP Dkt. No. 35 at 2. Having concluded that sanctions are not appropriate, we need not

appoint a special master to investigate or stay Appellant's deadline to file a reply brief.

## CONCLUSION

Based on the foregoing, we AFFIRM.